IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

KENNETH RAY SOWELL,  §
    *Petitioner*,  §
    §
v.  §    Civil Action No. H-08-0081
    §
NATHANIEL QUARTERMAN,  §
    *Respondent*.  §

## MEMORANDUM OPINION AND ORDER

Kenneth Ray Sowell, a state inmate proceeding *pro se* and *in forma pauperis*, seeks habeas relief under 28 U.S.C. § 2254 challenging his state felony conviction for aggravated robbery. Respondent filed a motion for summary judgment (Docket Entry No. 16), to which petitioner responded (Docket Entries No. 20, 23).

Based on consideration of the pleadings, the motion and responses, the record, and the applicable law, the Court **GRANTS** respondent's motion for summary judgment and **DISMISSES** this case with prejudice.

## I.  PROCEDURAL BACKGROUND AND CLAIMS

The jury found petitioner guilty of aggravated robbery and assessed punishment at seventy years incarceration. The conviction was affirmed on appeal. *Sowell v. State*, No. 14-05-00864-CR (Tex. App. – Houston [14th Dist.] 2006, no pet.) (not designated for publication). The Texas Court of Criminal Appeals denied petitioner's application for state habeas relief without a written order, on the findings of the trial court, without a hearing. *Ex parte Sowell*, No. 68,434-01.

Petitioner raises the following grounds for federal habeas relief:

    (1)    trial court error in instructing the jury panel on "reasonable doubt";

    (2)    trial court error in allowing improper extraneous offense evidence;

    (3)    an impermissibly suggestive pretrial identification procedure;

    (4)    ineffective assistance of trial counsel in

        (a)    failing to file a motion to suppress evidence;

        (b)    failing to file a motion to suppress the pretrial identification; and

        (c)    failing to object to extraneous offense evidence;

    (5)    an illegal search and seizure; and

    (6)    prosecutorial misconduct during closing argument.

Respondent argues that grounds (1), (2), (3), (5), and (6) are procedurally barred, and that ground (4) is without merit.

## II.   THE APPLICABLE LEGAL STANDARDS

A.   AEDPA

This petition is governed by applicable provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). 28 U.S.C. § 2254.  Under the AEDPA, federal relief cannot be granted on legal issues adjudicated on the merits in state court unless the state adjudication was contrary to clearly established federal law as determined by the Supreme Court, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000); 28

2

U.S.C. §§ 2254(d)(1), (2). A state court decision is contrary to federal precedent if it applies a rule that contradicts the governing law set forth by the Supreme Court, or if it confronts a set of facts that is materially indistinguishable from a Supreme Court decision and arrives at a result different from the Supreme Court's precedent. *Early v. Packer*, 537 U.S. 3, 7-8 (2002).

A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 409. In deciding whether a state court's application was unreasonable, this Court considers whether the application was objectively unreasonable. *Id.* at 411.

The AEDPA affords deference to a state court's resolution of factual issues. Under 28 U.S.C. § 2254(d)(2), a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state court proceeding. *Miller-El v. Cockrell*, 537 U.S. 322, 343 (2003). A federal habeas court must presume the underlying factual determination of the state court to be correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Miller-El*, 537 U.S. at 330-31.

B.    Summary Judgment

The Fifth Circuit recognizes that Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of federal habeas corpus cases. *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000). The party seeking summary judgment bears the initial burden of demonstrating an absence of a genuine issue of material fact and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which support its contention. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Williams v. Adams*, 836 F.2d 958, 960 (5th Cir. 1988). Any controverted evidence must be viewed in the light most favorable to the non-movant, and all reasonable doubts must be resolved against the moving party. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

If the moving party makes the required showing, then the burden shifts to the non-movant to show that a genuine issue of material fact remains for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986); *Fields v. City of South Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991). The non-movant cannot merely rest on the allegations of the pleadings, but must establish that there are material controverted facts in order to preclude summary judgment. FED. R. CIV. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Summary judgment is proper if the non-movant fails to make a showing sufficient to establish the existence of an element essential to his case on which he bears the burden of proof. *Celotex*, 477 U.S. at 322-23.

4

### III.   PROCEDURAL BAR

Petitioner complains that the trial court erred (1) in defining "reasonable doubt" for the jury panel; (2) in failing to exclude improper extraneous offense evidence during the guilt-innocence phase of trial; and (3) in failing to exclude an impermissibly suggestive pretrial identification.  In rejecting these issues on direct appeal, the state court of appeals held as follows:

> Kenneth Ray Sowell appeals a conviction for aggravated robbery on the grounds that: (1) the trial court erred by submitting a definition of reasonable doubt to the jury venire panel in violation of [state law]; (2) the live identification line-up of appellant was unduly suggestive because the other participants in the line-up were physically dissimilar; and (3) the trial court erred by allowing testimony during the guilt phase that suggested extraneous offenses.  However, because appellant failed to object to the trial court's alleged definition of reasonable doubt, the alleged line-up as being impermissibly suggestive, or any of the testimony that he now complains suggested extraneous offenses, his complaints are not preserved for our review.  Accordingly, appellant's three issues are overruled, and the judgment of the trial court is affirmed.

*Sowell,* at *1 (footnotes and citations omitted).

Petitioner raised these and his other claims in state court on collateral review.  In rejecting petitioner's habeas claims, the trial court entered the following relevant findings:

1.   Because the applicant's claims of trial court error . . . were raised on direct appeal and rejected by the Court of Appeals, these allegations need not be reconsidered on habeas.

2.   Moreover because the applicant failed to raise on direct appeal all of his instant claims of trial court error and prosecutorial misconduct, the applicant is procedurally barred from raising these claims in the instant proceeding.

3.     As the applicant's challenge to the live line-up identification of applicant was raised on direct appeal and rejected by the Court of Appeals, this allegation need not be reconsidered on habeas.

\*     \*     \*     \*

6.     The applicant's challenges to his arrest and search and seizure are not cognizable on habeas.

*Ex parte Sowell*, pp. 164-65 (citations omitted). The Texas Court of Criminal Appeals relied on these findings in denying habeas relief. *Id.*, at cover.

The Texas contemporaneous objection rule is strictly or regularly applied evenhandedly to the vast majority of similar claims, and is therefore an adequate procedural bar. *Turner v. Quarterman*, 481 F.3d 292, 300 (5th Cir. 2007). Accordingly, these issues have been procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Federal habeas relief will not be granted on a procedurally defaulted claim unless a petitioner can demonstrate both good cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice in that he is actually innocent of the offense. Petitioner satisfies none of these requirements, and the Court is barred from consideration of these claims. *See Nobles v. Johnson*, 127 F.3d 409, 422 (5th Cir. 1997).[1]

To the extent petitioner alleges ineffective assistance of trial counsel as good cause for his procedural defaults, this Court addresses and denies petitioner's Sixth Amendment

---

[1]Petitioner's Fourth Amendment claims are further barred by *Stone v. Powell*, 428 U.S. 465, 493-95 (1976). *See Hughes v. Dretke*, 412 F.3d 582, 595 (5th Cir. 2005).

claims for relief in Section IV, below.  To the extent petitioner relies on "plain error"

pursuant to Rule 52 of the Federal Rules of Criminal Procedure, the Rule has no application

to this Court's section 2254 habeas review and does not circumvent a procedural default.

Habeas relief is unwarranted, and respondent is entitled to summary judgment

dismissing these issues.

## IV.  INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

The Sixth Amendment to the United States Constitution guarantees a criminal

defendant the right to the effective assistance of counsel. U.S. CONST. amend. VI.  A federal

habeas petitioner's claim that he was denied effective assistance of counsel is measured by

the standards set out in *Strickland v. Washington*, 466 U.S. 668 (1984).  To assert a

successful ineffectiveness claim, a petitioner must establish both constitutionally deficient

performance by counsel and actual prejudice as a result of counsel's deficient performance.

*Id.* at 687. The failure to demonstrate either deficient performance or actual prejudice is fatal

to an ineffective assistance claim.  *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

A counsel's performance is deficient if it falls below an objective standard of

reasonableness. *Strickland*, 466 U.S. at 688.  In determining whether counsel's performance

was deficient, judicial scrutiny must be highly deferential, with a strong presumption in favor

of finding that trial counsel rendered adequate assistance and that the challenged conduct was

the product of a reasoned trial strategy. *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996).

To overcome this presumption, a petitioner must identify the acts or omissions of counsel

7

that are alleged not to have been the result of reasonable professional judgment. *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). However, a mere error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. *Strickland*, 466 U.S. at 691.

Actual prejudice from a deficiency is shown if there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Id.* at 694. To determine prejudice, the question focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). In that regard, unreliability or unfairness does not result if the ineffectiveness does not deprive the petitioner of any substantive or procedural right to which he is entitled. *Id.*

Petitioner raises three instances of alleged ineffective assistance of trial counsel, each of which is discussed separately, below.

A.    Failure to File a Motion to Suppress the Evidence

Petitioner claims that the police officers violated his Fourth Amendment rights by searching his apartment and seizing two firearms found in the apartment. He complains that the firearms were admitted into evidence, one during the guilt-innocence phase of trial and one during punishment. Petitioner argues that trial counsel was ineffective in failing to move to suppress the firearms under the Fourth Amendment.

8

In his affidavit submitted to the trial court on collateral review, trial counsel testified, in relevant part, as follows:

> I filed a Motion to Suppress the search and seizure of evidence in the matter. However, the State never introduced evidence that was suggested to have any connection to [petitioner]. A weapon recovered from Mr. Sowell's apartment was shown to witnesses. The witnesses testified that the weapon *looked* like the type of weapon that was used in the robbery. There was *never* any testimony that the weapon belonged to [petitioner], came from his apartment or was in anyway connected to him. There was never an occasion to urge the motion. The Suppression Motion in my opinion was therefore rendered moot.

*Ex parte Sowell*, p. 157 (original emphasis).

In rejecting petitioner's claim for ineffective assistance of counsel, the trial court on collateral review found the facts asserted by trial counsel in his affidavit true and the affidavit credible. The trial court entered the following relevant findings:

4. The applicant fails to show in all things that trial counsel's conduct fell below an objective standard of reasonableness and that, but for counsel's alleged deficient conduct, there is a reasonable probability that the result of the proceeding would have been different.

5. The totality of the representation afforded the applicant was sufficient to protect his right to reasonably effective assistance of counsel in the primary case.

*Ex parte Sowell*, pp. 164-65 (citations omitted). The Texas Court of Criminal Appeals relied on these findings in denying habeas relief. *Id.*, at cover.

The record shows that, during the guilt-innocence phase of trial, the State presented complainant Anthony Brooks with a firearm exhibit, and elicited his testimony that the firearm resembled the one used by petitioner during the robbery. S.F., Vol. 3, p. 19. The

State offered the firearm for demonstrative purposes only. Trial counsel had no objections, and the firearm was admitted into evidence. *Id.* The jury was not informed of any source for, or ownership of, the firearm, and Brooks testified that the weapon resembled the one used during the robbery. Similarly, during the punishment phase of trial, the State's witness testified that the second firearm resembled the one used during another robbery, and the weapon was introduced and admitted into evidence for demonstrative purposes only. *Id.*, Vol. 4, pp. 31, 35.

The State did not assert that the firearms belonged to petitioner or that they were used by him in the robbery. As noted by trial counsel in his affidavit, there was never an opportunity or reason to urge a motion to suppress regarding the demonstrative evidence. Petitioner fails to show that, had counsel moved to suppress the firearms as demonstrative evidence, the motion would have been granted. Further, petitioner's assertion that "the State's case was based solely on the illegal search and seizure evidence," is refuted by Brooks's testimony that petitioner robbed him at gunpoint. The State was not required to introduce into evidence the weapon, or a reasonable facsimile of the weapon, used by petitioner in commission of the robbery. Petitioner does not show that, but for counsel's failure to move to suppress the demonstrative evidence, there is a reasonable probability that the result of the trial would have been different. *Strickland.*

The state courts denied habeas relief on this issue. Petitioner fails to show that the state courts' determination was contrary to, or involved an unreasonable application of,

*Strickland*, or that it was an unreasonable determination of the facts based on the evidence in the record.  No basis for habeas relief is shown, and respondent is entitled to summary judgment on this ground.

B.    Failure to File a Motion to Suppress the Pretrial Identification

Anthony Brooks, the complainant, identified petitioner in a pretrial line-up. Petitioner complains that the pretrial line-up was unduly and impermissibly suggestive because there was a four inch height and seventy-five pound weight difference among the five black males comprising the line-up, and that he was the only bald participant.[2] He asserts that counsel was ineffective in failing to object to his pretrial line-up as being impermissibly suggestive.

In his affidavit submitted to the trial court on collateral review, trial counsel testified, in relevant part, as follows:

> I did not file a Motion to Suppress the live line-up of the Defendant in this matter.  I reviewed the line-up video in the matter prior to trial.  In my professional opinion, I did not believe that the line-up was impermissibly suggestive.  I reviewed cases in the matter prior to trial which indicated all individuals in a pretrial identification need not be identical or that a variance in height of the line-up participants was cause to find the procedure impermissibly suggestive.  I therefore did not believe such a motion would be beneficial.

*Ex parte Sowell*, pp. 157-58.

---

[2]Brooks testified that the person who robbed him had appeared to be bald under the bandanna he wore during the robbery. *Id.*, p. 24.  Petitioner was bald at the time of the line-up, but wore a low haircut at the time of trial. *Id.*, pp. 50, 83.

In rejecting petitioner's claim for ineffective assistance of counsel, the trial court on collateral review found that the facts asserted by trial counsel in his affidavit were true and that the affidavit was credible. The trial court entered the following relevant findings:

4.   The applicant fails to show in all things that trial counsel's conduct fell below an objective standard of reasonableness and that, but for counsel's alleged deficient conduct, there is a reasonable probability that the result of the proceeding would have been different.

5.   The totality of the representation afforded the applicant was sufficient to protect his right to reasonably effective assistance of counsel in the primary case.

*Ex parte Sowell*, pp. 164-65 (citations omitted). The Texas Court of Criminal Appeals relied on these findings in denying habeas relief. *Id.*, at cover.

Trial counsel was deficient in failing to object to the identification only if the objection would have been granted. Thus, petitioner must establish that his line-up was impermissibly suggestive. A pretrial identification procedure may be so suggestive and conducive to misidentification that it would deny the defendant due process of law if the pretrial identification were used at trial. *See Simmons v. United States*, 390 U.S. 377, 384 (1968); *Barley v. State*, 906 S.W.2d 27, 32-33 (Tex. Crim. App. 1995) (en banc). The test is whether, considering the totality of the circumstances, the procedure (1) was impermissibly suggestive; and, if so, (2) whether there was a very substantial likelihood of irreparable misidentification. *Simmons*, 390 U.S. at 384; *Coleman v. Quarterman*, 456 F.3d 537, 544 (5th Cir. 2006); *Barley*, 906 S.W.2d at 33. The fact that participants in the array do not

12

perfectly match the physical description of the suspect does not render the line-up impermissibly suggestive. *Wilson v. State*, 15 S.W.3d 544, 553 (Tex. App. – Dallas 1999, pet. ref'd). The second part of the test is not reached if the line-up was not shown to be impermissibly suggestive. *Peters v. Whitley*, 942 F.2d 937, 939 (5th Cir. 1991).

Following the robbery, Brooks told the police that the robber was "approximately a little bit taller than me, short, stocky, black, dressed in all black, tattoo on the left side of his neck." S.F., Vol. 3, p. 31. In discussing his subsequent positive identification of petitioner in the line-up, Brooks testified to the following:

| | |
|---|---|
| THE STATE: | When you identified [petitioner], did you give the officer a range as to how sure you were that he was the same individual? |
| COMPLAINANT: | I gave him a very sure range. |
| THE STATE: | Was there any question in your mind as you identified the defendant in that line-up that he was, in fact, the person who robbed your store? |
| COMPLAINANT: | No question at all. |

*Id.*, p. 34.     On cross-examination, Brooks testified as follows:

| | |
|---|---|
| DEFENSE COUNSEL: | Do you recall giving an estimate to the police officer of the height of the assailant? |
| COMPLAINANT: | Yes, sir. |
| DEFENSE COUNSEL: | And what do you recall that estimate being in terms of his height? |
| COMPLAINANT: | A little taller than me, five six, five eight. |

13

*Id.*, p. 45.

| | |
|---|---|
| DEFENSE COUNSEL: | Were the people in that line-up about five six to five eight? |
| COMPLAINANT: | Not all. |
| DEFENSE COUNSEL: | Did the people in that line-up have bald heads? |
| COMPLAINANT: | No, sir. |
| DEFENSE COUNSEL: | Did the people in that line-up have stocky builds? |
| COMPLAINANT: | Yes, sir. |
| DEFENSE COUNSEL: | All of them? |
| COMPLAINANT: | No, sir. |
| DEFENSE COUNSEL: | How many people in that line-up fit the description that you gave to the police as to the person who robbed you? |
| COMPLAINANT: | One. |
| DEFENSE COUNSEL: | How many people were of the same size and general build of the person who robbed you? |
| COMPLAINANT: | One. |
| DEFENSE COUNSEL: | So, the line-up had an individual in it that fit the description of the robber, but the other people didn't fit that description? |
| COMPLAINANT: | No, sir. |
| DEFENSE COUNSEL: | And they were not about the same height or build? |

14

| | |
|---|---|
| COMPLAINANT: | Same height, not the same build.  Same build, not the same height. |

*Id.*, pp. 46-47.  On re-direct, the complainant further testified that:

| | |
|---|---|
| THE STATE: | I want to talk about the line-up with you for just a second, Mr. Brooks.  Were you given any instructions prior to viewing the line-up? |
| COMPLAINANT: | Yes, ma'am. |
| THE STATE: | Do you recall what those instructions were? |
| COMPLAINANT: | No loud outbursts.  Whatever I see, keep it to myself until I meet with the officer outside the room one by one. |
| THE STATE: | Did anything the officer tell you make you feel pressured that you had to pick somebody out? |
| COMPLAINANT: | No, ma'am. |
| THE STATE: | You told us that you were very sure when you identified the defendant. |
| COMPLAINANT: | Yes, ma'am. |
| THE STATE: | Was there anybody of the other four or five people in the line-up that shared similar characteristics?  Were all of the people that you saw black? |
| COMPLAINANT: | Yes, ma'am. |
| THE STATE: | Were they all males? |
| COMPLAINANT: | Yes, ma'am. |
| THE STATE: | Were they of the same general height? |
| COMPLAINANT: | Some were. |

THE STATE:      Were they – did some of them have the same general build as the defendant?

COMPLAINANT:  Yes, ma'am.

THE STATE:      What about the hair?

COMPLAINANT:  Most had low haircuts.

THE STATE:      Low haircuts.  Kind of like the defendant has now?

COMPLAINANT:  Yes, ma'am.

THE STATE:      Was there anyone else who was bald?

COMPLAINANT:  Not that I know of.

THE STATE:      And this was at least two and a half weeks [later]?  Is that your estimate as to how long?

COMPLAINANT:  Yes, ma'am.

*Id.*, pp. 49-51.

During cross-examination by defense counsel, the State's witness, Detective Wright, testified to the height, weight, and race of the five participants in petitioner's pretrial line-up. He testified that all of the participants were black males, and that the height and weight for each participant was:  (1) five feet, seven inches, 190 pounds (petitioner); (2) five feet, seven inches, 150 pounds; (3) five feet, eleven inches, 225 pounds; (4) five feet, nine inches, 175 pounds; and (5) five feet, nine inches, 195 pounds. *Id.*, pp. 77-79.  Wright testified that he told Brooks that the person he was looking for may or may not be in the line-up. *Id.*, p. 80.

16

Although there were some minor differences among the participants, it is not essential to a proper line-up for all the individuals to be identical in appearance; general similarity is sufficient. *Buxton v. State*, 699 S.W.2d 212, 216 (Tex. Crim. App. 1985). Trial counsel thoroughly questioned the State's witnesses regarding the line-up and its participants, and brought forward evidence for the jury to use in weighing complainant's identification testimony. It cannot be said that, under the totality of the circumstances, petitioner's pretrial line-up was impermissibly suggestive or so suggestive and conducive to misidentification that it denied him due process of law. Having considered the descriptions of the line-up participants given by the State's witnesses and the complaints raised by petitioner regarding those participants, this Court concludes that petitioner fails to show that, had counsel objected to the pretrial line-up as impermissibly suggestive, the objection would have been granted.

Petitioner also contends that trial counsel should have objected to Brooks's identification of him as unreliable. The Supreme Court has noted several factors relevant to determining the reliability of an identification: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972). This argument affords petitioner no relief. The record shows that petitioner approached Brooks at the store's counter, pointed the firearm

17

at him, and demanded the store's money. Brooks had a clear, close, and unobstructed view of petitioner and his face, and his attention was focused on the robber standing in front of him. Brooks's description of petitioner was accurate, and he voiced a high level of certainty at the line-up that petitioner was the robber. Although the line-up occurred two and one-half weeks after the robbery, the record does not demonstrate that the delay impaired Brooks's ability to identify petitioner or his level of certainty. Petitioner fails to establish that, had counsel object to the identification as unreliable, that the objection would have been granted. No deficient performance is shown.

The state courts denied habeas relief on this issue. Petitioner fails to show that the state courts' determination was contrary to, or involved an unreasonable application of, *Strickland*, or that it was an unreasonable determination of the facts based on the evidence in the record. No basis for habeas relief is shown, and respondent is entitled to summary judgment on this ground.

C.    Failure to Object to Extraneous Offense Evidence

As previously noted, the complainant positively identified petitioner in the pretrial line-up. However, Detective Wright testified during cross-examination by defense counsel that *nine* people were shown the line-up that day. S.F., Vol. 3, pp. 85-86. Thus, the jury heard that, although nine individuals viewed the line-up, only one person positively identified petitioner.

18

Following this cross-examination, the State and defense counsel approached the bench, and the following bench conference occurred:

THE STATE:        I think at this time that –

COURT REPORTER:      Talk a little louder.  I can't hear you.

THE STATE:        Okay.  Of the nine people, the view is six of them getting it (sic); so I don't know.

THE COURT:        Well, we're in a position where it could leave a false impression with the jury if there were nine people in there, but they have heard testimony that there were only five people in this pawn shop.  But it could leave a false impression.  If there are nine people that saw the line-up but one was able to identify him.

I'll let you do this.  How many witnesses were called in this case?

THE STATE:        One.

THE COURT:        Just one.  I would let you ask very specifically:  Of the witnesses that were just alluded to, how many of them involved the EZ Pawn – how many of them involved this particular case.

THE STATE:        I'll use the Beechnut street name that we have been talking about.

THE COURT:        How many positive identifying (sic) – the case we're here to try today and then just go on.  You may be able to go into the whole deal to explain everything.  I just, out of an abundance of caution, [am] just trying to be fair.

THE STATE:        Okay.

THE COURT:        If we can do that, I think that will do it.

19

(End of bench discussion.)

THE STATE:    Detective Wright, of the witnesses that we have just been
              speaking of, the ones that viewed the line-up, how many
              were involved in the Beechnut EZ Pawn [case] that
              we're here to talk about today?

THE WITNESS:  One.

S.F., Vol. 3, pp. 86-88.  The witness was then excused.

Petitioner complains that, because the jury heard that other individuals viewed his line-up who were *not* involved in this underlying offense, it constituted extraneous offense evidence that petitioner was a suspect in other offenses.  He asserts that defense counsel was ineffective in failing to object to this extraneous offense evidence.

In his affidavit submitted to the trial court on collateral review, trial counsel testified, in relevant part, that he "did not believe that the testimony in question suggested [petitioner's] involvement in extraneous offenses and therefore [he] did not object." *Ex parte Sowell*, p. 158.

In rejecting petitioner's claim for ineffective assistance of counsel, the trial court on collateral review found that the facts asserted by trial counsel in his affidavit were true and that the affidavit was credible.  The trial court entered the following relevant findings:

4.    The applicant fails to show in all things that trial counsel's conduct fell
      below an objective standard of reasonableness and that, but for
      counsel's alleged deficient conduct, there is a reasonable probability
      that the result of the proceeding would have been different.

20

> 5.   The totality of the representation afforded the applicant was sufficient to protect his right to reasonably effective assistance of counsel in the primary case.

*Ex parte Sowell*, pp. 164-65 (citations omitted).  The Texas Court of Criminal Appeals relied on these findings in denying habeas relief.  *Id.*, at cover.

This Court has reviewed the record and agrees that Detective Wright's testimony does not constitute or suggest evidence of an extraneous offense.  In so doing, this Court rejects petitioner's argument that the "inescapable conclusion" of the testimony was that he was suspected of other crimes.  While the trial court may have been concerned that the testimony suggested that eight of nine people involved in petitioner's offense were unable to identify petitioner, his efforts to remedy that impression did not "create" evidence of an extraneous offense.  Detective Wright testified that line-ups were drawn from the pool of jail inmates available when a line-up was needed, and that the inmates chosen for a line-up may or may not have been involved in the viewer's particular case.  S.F., Vol. 3, pp. 76-77.  One alternate but availing impression the jury here may have reasonably drawn is that petitioner was part of the line-up viewed by individuals regarding offenses for which petitioner was *not* a suspect.  Petitioner fails to show that, had counsel objected to the testimony as evidence of an extraneous offense, the objection would have been granted.  *See Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990) (holding that trial counsel is not deficient in failing to raise meritless objections).

The state courts denied habeas relief on this issue.  Petitioner fails to show that the state courts' determination was contrary to, or involved an unreasonable application of, *Strickland*, or that it was an unreasonable determination of the facts based on the evidence in the record.  No basis for habeas relief is shown, and respondent is entitled to summary judgment on this ground.

## V.  CONCLUSION

For the reasons stated above, the Court **GRANTS** respondent's motion for summary judgment (Docket Entry No. 16) and **DISMISSES** this case with prejudice.  Any and all pending motions are **DENIED AS MOOT**.  A certificate of appealability is **DENIED**.

The Clerk will provide a copy of this order to the parties.

Signed at Houston, Texas, on this the 13th day of March, 2009.


KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE